**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| ANTHONY MONTEZ TAYLOR, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | **Case No. 15-cv-0319-MJR** |
| | ) | (Related Case: 12-cr-30090-MJR) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**ORDER ON PETITION TO VACATE, SET ASIDE, OR**
**CORRECT SENTENCE PURSUANT TO 28 U.S.C. 2255**

**REAGAN, Chief Judge:**

A.   **Introduction and Procedural History**

In March 2013, the undersigned sentenced Anthony Montez Taylor in Case No.

12-cr-30090.  Now before this Court is Taylor's March 2015 petition to vacate, set aside,

or correct that sentence under 28 U.S.C. 2255.  An overview of the key facts and findings

from the underlying criminal case aids resolution of Taylor's petition.

On March 5, 2012, two Fairmont City (Illinois) police officers conducted a weekly

"business check" at the First Western Inn on Collinsville Road.  While walking the

hallways and corridors of the motel, the officers detected a strong odor of burnt

cannabis near Room 221.   The officers conducted a "knock and talk" at Room 221.[1]

Taylor opened the door of Room 221, the officers remained in the exterior hallway, and

---

[1]     A "knock and talk" has been defined as a "consensual, information-
gathering encounter," typically conducted without a warrant.  ***United States v.
Lewis*, 608 F.3d 996, 997 (7th Cir. 2010).**  This technique is often used by law
enforcement to investigate and/or to seek consent to search.  ***See also United
States v. Johnson*, 170 F.3d 708, 720 (7th Cir. 1999)(noting that police officers
"must recognize the inherent limits in this more informal way of proceeding").**

Taylor stood in (or at one point just outside) the doorway to his room.  Taylor said that his girlfriend, Brittany Lavington, was in the room.  At the hearing on the suppression motion, accounts of the sequence of events differed somewhat between Lavington, Defendant Taylor, another occupant of the motel (Byron Blackwell, the guest in Room 218), and the two officers.

Lavington admitted that she retrieved a green glass pipe from her coat pocket in Room 221, gave the pipe to the officers outside the door of the room, and declared that it was the only illegal item in the room.  Lavington also admitted that she had, in fact, been smoking "weed" just prior to the knock on the door that night.  Asked by the officers if there was any more marijuana in the room, Taylor responded that "it was all smoked up."  Taylor denied repeated requests from the officers for consent to search Room 221 for other drugs or drug paraphernalia.  The officers persisted in requesting consent to search.  Taylor continued to refuse.

Ultimately, when told that the officers would secure the room while they obtained a search warrant, Taylor consented to the search.  (This Court concluded that Taylor consented; Taylor denies ever consenting.)  The search took only a couple of minutes.  One officer observed a razor blade with white residue on a sink counter, an open box of baking soda, and a black coat hanging on the coat rack next to the sink. Three white rocklike substances were located in the left front pocket of the coat.  When the rocks were found, Taylor stated, "Ah, shit, that's cocaine" and admitted that it was his.  Taylor was arrested, handcuffed, and taken to the police station.  At the station,

Taylor declined a request to provide a statement regarding the substance seized from his pocket (which later tested positive as cocaine base).

Indicted for possessing crack cocaine with the intent to distribute it in violation of 21 U.S.C. 841(a)(1), Taylor moved to suppress the cocaine and the statements he made identifying the substance as cocaine and admitting the cocaine was his.  Taylor argued that the search itself was illegal – supported by neither warrant nor consent – and that the statements were the fruit of the illegal search.  An evidentiary hearing was held over the course of two days in September 2012.

On October 16, 2012, the undersigned denied Taylor's motion to suppress. Represented in this District Court by Assistant Federal Public Defender G. Ethan Skaggs, Taylor pled guilty, reserving the right to appeal the suppression ruling.   Taylor was represented on appeal by Jonathan Hawley and Peter Henderson, who challenged this Court's denial of the suppression motion.

The United States Court of Appeals for the Seventh Circuit affirmed the conviction, finding that this Court had an adequate basis on which to conclude that Taylor consented to the search.  *United States v. Taylor,* **549 Fed. Appx. 562 (7th Cir. 2013).**  The United States Supreme Court denied Taylor's petition for writ of certiorari on May 27, 2014.  *Taylor v. United States,* **134 S. Ct. 2689 (2014).**

On March 23, 2015, Taylor filed in this District Court a pro se petition to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. 2255.  The Court conducted prompt threshold review of the petition under Rule 4 of the Rules Governing Section 2255 Proceedings for the United States District Courts and set a briefing schedule.

Before the United States of America responded, Taylor moved to amend his § 2255 petition. The Court permitted the amendment, conducted threshold review of the amended petition, and identified the arguments presented as follows (Doc. 7, p. 3; emphasis in original).

> **(A)    Whether Petitioner received ineffective assistance of counsel in this Court, based on his attorney's investigation of the issues supporting – and argument at the hearing on the motion for – suppression of evidence; and**

> **(B)    Whether this Court erred in determining Petitioner's sentence by a preponderance of the evidence standard or in counting Petitioner's prior offenses when calculating his criminal history.**

The amended petition ripened with Taylor's filing of an October 26, 2015 reply.[2] In a separate motion filed that day, Taylor (a) asks the Court to appoint him counsel under 18 U.S.C. 3006A in light of the recent Supreme Court decision in ***United States v. Johnson*, -- U.S. --, 135 S. Ct. 2251 (2015),** which declared unconstitutional the residual clause of the Armed Career Criminal Act, 18 U.S.C. 924(e)(2)(B)(ii), and (b) presents a third claim for § 2255 relief (based on *Johnson*).

"The court should grant an evidentiary hearing on a § 2255 motion when the petitioner 'alleges facts that, if proven, would entitle him to relief.'"  ***Sandoval v. United States*, 574 F.3d 847, 850 (7th Cir. 2009),** *citing Hall v. United States*, **371 F.3d 969, 972 (7th Cir. 2004), and 28 U.S.C. 2255(b).**  A hearing may be needed, for instance, if the

---

[2]    The reply brief was due October 21, 2015.  The certificate of service indicates the brief was placed in the prison mail system on October 20, 2015. For purposes of this § 2255 proceeding, the Court will give Petitioner Taylor, proceeding pro se, the benefit of the "mailbox rule" for his 10/26/15 filings.

petition alleges ineffective assistance and the record is factually insufficient to explain counsel's actions.  *Osagiede v. United States*, **543 F.3d 399, 408 (7th Cir. 2008).**

Having carefully reviewed the petition and briefs, the Court concludes that an evidentiary hearing is not needed as to the issues set forth in Taylor's amended petition. Those issues can be resolved on the existing record, which conclusively demonstrates that Taylor is not entitled to § 2255 relief on those grounds.  *See* **Rule 8(a) of RULES GOVERNING SECTION 2255 PROCEEDINGS;** *Almonacid v. United States*, **476 F.3d 518, 521 (7th Cir.),** *cert. denied,* **551 U.S. 1132 (2007);** *Gallo-Vasquez v. U.S.*, **402 F.3d 793, 797 (7th Cir. 2005).**

As to the *Johnson*-based argument raised by Taylor in his October 26, 2015 motion (Doc. 15), the Court believes that appointment of counsel for Petitioner Taylor is appropriate and additional briefing by counsel is warranted, after which the undersigned will assess whether an evidentiary hearing should be set.

For the reasons explained below, the Court **DENIES** Taylor's petition to vacate, set aside, or correct sentence (Doc. 8) and **RESERVES RULING** (and orders briefing) on the supplemental § 2255 claim based on *Johnson* and presented in the October 26, 2015 motion (part of Doc. 15).

### B.   <u>Applicable Legal Standards</u>

28 U.S.C. 2255 is the vehicle by which a person in custody under a sentence issued by a federal court asserts that his sentence was imposed in violation of the Constitution or laws of the United States, the court did not have jurisdiction to impose the sentence, or the sentence is otherwise subject to collateral attack.

Relief under 28 U.S.C. 2255 is limited. Unlike a direct appeal, in which a defendant may complain of nearly any error, § 2255 may be used only to correct errors that vitiate the sentencing court's jurisdiction or are otherwise of constitutional magnitude.

The United States Court of Appeals for the Seventh Circuit has emphasized that relief under § 2255 "is available only in extraordinary situations," requiring an error of constitutional or jurisdictional magnitude or a fundamental defect that resulted in a complete miscarriage of justice. *Blake v. United States,* **723 F.3d 870, 879 (7th Cir. 2013),** *cert. denied,* **134 S. Ct. 2830 (2014).** *Accord Harris v. United States,* **366 F.3d 593, 594 (7th Cir. 2004) (Section 2255 relief is appropriate only for an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect that inherently resulted in a complete miscarriage of justice);** *Barnickel v. United States,* **113 F.3d 704, 705 (7th Cir. 1997) (2255 petitioner must demonstrate the alleged error is "jurisdictional, constitutional, or is a fundamental defect which inherently results in a complete miscarriage of justice");** *Prewitt v. United States,* **83 F.3d 812, 816 (7th Cir. 1996) ("relief under 28 U.S.C. § 2255 is reserved for extraordinary situations").** So, for instance, an error in calculating the advisory Sentencing Guidelines range typically is not cognizable in a § 2255 petition. *United States v. Coleman,* **763 F.3d 706, 708 (7th Cir. 2014),** *citing Welch v. United States,* **604 F.3d 408, 412 (7th Cir. 2010),** and *Hawkins v. United States,* **706 F.3d 820 (7th Cir. 2013).**

Section 2255 cannot be used as a substitute for a direct appeal or, pertinent to the case at bar, to re-litigate issues decided on direct appeal. *See United States v. Fleming,*

**676 F.3d 621, 625 (7th Cir. 2012); *Coleman v. United States*, 318 F.3d 754, 760 (7th Cir.), *cert. denied*, 540 U.S. 926 (2003); *Sandoval*, 574 F.3d at 850; *White v. United States*, 371 F.3d 900, 902 (7th Cir. 2004).**

The Seventh Circuit explained nearly twenty years ago in ***McCleese v. United States*, 75 F.3d 1174, 1178 (7th Cir. 1996):**

> A § 2255 motion is "neither a recapitulation of nor a substitute for a direct appeal." *Belford v. United States,* 975 F.2d 310, 313 (7th Cir. 1992). As a result, constitutional errors not raised on direct appeal may not be raised in a § 2255 motion unless the defendant can demonstrate either: (1) both good cause for his failure to raise the claims on direct appeal and actual prejudice from the failure to raise those claims, or (2) that the district court's refusal to consider the claims would lead to a fundamental miscarriage of justice.

More recently, the Seventh Circuit reiterated:  "A 28 U.S.C. 2255 motion … cannot be used as a vehicle for challenging the restitution component of a sentence…. [W]e have been clear that such motions are no substitute for a direct appeal." ***United States v. Bania*, 787 F.3d 1168, 1172 (7th Cir. 2015).**

Most claims of ineffective assistance of trial counsel *are* properly raised for the first time via 28 U.S.C. 2255, rather than direct appeal.  ***Ramirez*, 799 F.3d 845, 852 (7th Cir. 2015).**  Such claims generally are better suited to review under § 2255, where a fuller record can be developed, and evidence bearing on the claim can be presented. *See **United States v. Moody*, 770 F.3d 577, 582 (7th Cir. 2014); *United States v. Bryant*, 754 F.3d 443, 444 (7th Cir. 2014); *United States v. Waltower*, 643 F.3d 572, 579 (7th Cir.), *cert. denied*, 132 S. Ct. 562 (2011); *United States v. Harris*, 394 F.3d 543, 558 (7th Cir.**

2005); *Massaro v. United States,* **538 U.S. 500, 504-05 (2003).**  Bearing these principles in mind, the Court turns to the two claims advanced in Taylor's April 2015 § 2255 petition.

### C.    Analysis of Claim 1:  Ineffective Assistance of Counsel

The Sixth Amendment to the United States Constitution provides that in all criminal prosecutions, "the accused shall enjoy the right … to have the Assistance of Counsel for his defence."  **U.S. CONST. amend. VI.**   The right to assistance of counsel encompasses the right to effective assistance of counsel.  *Blake,* **723 F.3d at 879,** *citing Watson v. Anglin,* **560 F.3d 687, 690 (7th Cir. 2009).**

Taylor maintains that he was denied the effective assistance of counsel in connection with his suppression motion.  Specifically, Taylor asserts that his counsel in this court failed to properly investigate the issues underlying the suppression motion and during the hearing on the suppression motion "failed to put fourth [sic] a reasonable argument based on testimony or law" and largely relied on the Government's account of the events, "which left the Court with an option of [deciding] who to believe was telling the truth" (Doc. 8, p. 4).  Taylor claims that his counsel on appeal also presented a frivolous argument in challenging the suppression ruling (*id*.).

A petitioner claiming ineffective assistance of counsel bears the burden of establishing both elements of the so-called "*Strickland*" test:  (1) counsel's performance fell below objective standards for reasonably effective representation, and (2) counsel's deficiency prejudiced the petitioner.  *Blake,* **723 F.3d at 879,** *citing Strickland v. Washington,* **466 U.S. 668, 687-88 (1984).**  *See also United States v. Jones,* **635 F.3d 909,**

915 (7th Cir. 2011); *Wyatt v. United States*, 574 F.3d 455, 457 (7th Cir. 2009), *cert. denied*, 559 U.S. 1023 (2010).

As to the first prong of *Strickland,* there is a "strong presumption" that counsel's conduct fell within the wide range of professional assistance.  *Swanson v. United States,* 692 F.3d 708, 714 (7th Cir. 2012).   As to the second prong of *Strickland,* a petitioner establishes prejudice only if he shows "a reasonable probability that, but for counsel's unprofessional errors, *the result of the proceeding would have been different.*" *United States v. Parker*, 609 F.3d 891, 894 (7th Cir. 2010), *quoting Strickland,* 466 U.S. at 694 (emph. in original).   Prejudice does not require a showing of but-for causation. Instead a petitioner must demonstrate a reasonability probability (one "sufficient to undermine confidence in the outcome") that counsel's errors materially affected the outcome of the proceeding.  *Raether v. Meisner*, 608 Fed. Appx. 409, 414 (7th Cir. 2015), *quoting Strickland,* 466 U.S. at 694.

A sentencing court can engage in merits review of an ineffective assistance claims only if the petitioner has not waived his right to mount a collateral attack.  Here, Taylor *did* waive his right to challenge his sentence under 28 U.S.C. 2255.   His plea agreement plainly provides (Case No. 12-30090, Doc. 53, p. 8; emph. added):

> The Defendant is aware that Title 28 and other provisions of the United States Code afford every defendant limited rights to contest a conviction and/or sentence through collateral attack.  However, **in exchange for the recommendations and concessions made by the United States in this plea agreement, the Defendant knowingly and voluntarily waives his**

**right to collaterally contest any aspect of his conviction and sentence that could be contested under Title 28….[3]**

So, the threshold issue to be addressed is the effect of Taylor's waiver of the right to file a collateral challenge on the § 2255 petition now before this Court.  Without question, a defendant (as a part of his plea agreement) may validly waive his right to collateral review of his sentence under § 2255.  ***Keller v. United States*, 657 F.3d 675, 681 (7th Cir. 2011),** *citing* ***Jones v. United States*, 167 F.3d 1142, 1144–45 (7th Cir. 1999).**  Such waivers are fully enforceable "unless the waiver was involuntary or counsel was ineffective in negotiating the agreement."  ***Bridgeman v. United States*, 229 F.3d 589, 591 (7th Cir. 2000).  *Accord Mason v. United States*, 211 F.3d 1065, 1069 (7th Cir. 2000),** *cert. denied,* **531 U.S. 1175.**

In other words, the waiver stands or falls with the plea. If the plea agreement was involuntary, then the waiver falls because it is part of the plea package. ***United States v. Zitt,* 714 F.3d 511, 515 (7th Cir. 2013).  *See also United States v. Wenger,* 58 F.3d 280, 282 (7th Cir.) (if plea agreement is voluntary and taken in compliance with Rule 11, waiver must be honored),** *cert. denied,* **516 U.S. 936 (1995).**

A waiver does not preclude a defendant's claim that the plea agreement *itself* was the product of ineffective assistance of counsel.  ***United States v. Hodges,* 259 F.3d 655,**

---

[3]      The plea agreement allows certain challenges.  For instance, the waiver "shall not apply to … any subsequent change in the interpretation of the law by the United States Supreme Court … that is declared retroactive by [that Court] … and that renders the defendant actually innocent of the charges covered herein" or "appeals based upon Sentencing Guideline amendments that are made retroactive by the United States Sentencing Commission" (Doc. 53, p. 8).

**659, n. 3 (7ᵗʰ Cir. 2001).**  In *Dowell v. United States,* **694 F.3d 898, 901-02 (7ᵗʰ Cir. 2012),**

the Seventh Circuit explained:

> A defendant may certainly waive the right to appeal his conviction and
> sentence, as well as the ability to challenge either in a collateral attack….
> We have repeatedly held "that a voluntary and knowing waiver … is
> valid and must be enforced."  *See, e.g., United States v. Sakellarion,* 649 F.3d
> 634, 638 (7ᵗʰ Cir. 2011).  There are only limited instances when we will not
> enforce a knowing and voluntary waiver of direct appeal or collateral
> review, including when the sentence exceeds the statutory maximum,
> when the plea or court relies on a constitutionally impermissible factor
> like race, or when counsel is ineffective in the negotiation of the plea
> agreement.

In *Keller,* **657 F.3d at 681 (7ᵗʰ Cir. 2011),** the Seventh Circuit likewise held that a

defendant's waiver of the right to collateral review of his sentence will be enforced unless

the plea agreement was involuntary, the court relied on a constitutionally impermissible

factor, the sentence exceeded the statutory maximum, or the defendant received

ineffective assistance of counsel "in connection with the negotiation of the plea

agreement."

As to the latter point, in *Hurlow v. United States,* **726 F.3d 958, 966 (7ᵗʰ Cir. 2013),**

the Seventh Circuit reaffirmed that a "collateral review waiver does not bar a challenge

regarding the validity of a plea agreement (and necessarily the waiver it contains) on

grounds of ineffective assistance of counsel."  The Court clarified that the challenges

which are permitted despite waivers include ineffective assistance claims relating to *any*

*part of the plea agreement*.  The Court stressed that despite "less-than-artful" language in

earlier decisions, "we have never held that the waiver is unenforceable only when

counsel is ineffective in negotiating the specific waiver provision" of the agreement.

Instead, "an attorney's ineffectiveness with regard to the plea agreement as a whole, and not just the specific waiver provision at issue, renders the waiver unenforceable." *Id.*, **726 F.3d at 965.**

In the case at bar, Petitioner Taylor does not assert that his plea agreement was involuntary. And the answers he gave under oath at his change of plea hearing would scotch any such assertion. The Honorable Donald G. Wilkerson conducted a thorough and detailed plea colloquy on November 20, 2012, the transcript of which was filed herein (Doc. 11-3). Judge Wilkerson established that Mr. Taylor fully understood the consequences of his plea agreement, wanted to plead guilty, was aware of the rights he was surrendering by pleading guilty, and did so voluntarily. For instance, the following exchange occurred (Doc. 11-3, pp. 13-14; emph. added):

> THE COURT:    Has anyone threatened you or forced you, intimidated you to get you to plead guilty here today?
>
> THE DEFENDANT:    No, sir.
>
> … THE COURT:    Drawing your attention to page 9, is that your signature on page 9?
>
> THE DEFENDANT:    Yes, sir.
>
> THE COURT:    Same questions – Anybody force you to sign that?
>
> THE DEFENDANT:    No, sir.
>
> THE COURT:    You signed that document of your own free will?
>
> THE DEFEDANT:    Yes, sir.
>
> THE COURT:    Have you been over this document from beginning to end, every word?

THE DEFENDANT:          Yes, sir.

THE COURT:          Is there anything in this document you disagree with?

THE WITNESS:          No, sir.

THE COURT:          Okay.    Mr. Massey, if you would, what's the substance of the plea agreement between the United States of America and Anthony Montez Taylor?

MR. MASSEY:          First, Your Honor, the United States has agreed to withdraw the Information that was previously filed pursuant to Section 851.   The defendant will enter what is basically an open plea without any agreement as to the sentence that is imposed – will be imposed. The defendant specifically reserves the right to appeal and to contest the results of a motion to suppress evidence and statements, which has previously been heard by the District Court, **but does waive his right to collaterally attack the conviction following results of any appeal.**

When defense counsel, Mr. Skaggs, was asked to weigh in, he confirmed that Taylor was reserving the right to appeal the suppression ruling but waiving "any rights to collateral attack" (*id*, p. 15).   Judge Wilkerson then asked Defendant Taylor if he heard and understood what the lawyers had stated regarding what Taylor was getting and what he was giving up by entering the plea agreement.   Taylor verified that he did understand (*id.*).

Judge Wilkerson similarly inquired (Doc. 11-3, p. 19) whether Taylor had voluntarily signed the stipulation of facts "of his own free will" (Taylor said yes), if Taylor had been over the stipulation word for word (Taylor had), if there was anything in the document that Taylor disagreed with (there was not), and if Taylor had done the things that the Government accused him of in the stipulation (and Taylor said yes).

Taylor's plea colloquy fully complied with Federal Rule of Criminal Procedure 11.  The record establishes that Taylor's plea was knowing and voluntary.

Taylor does not argue in his § 2255 petition that his plea was unknowingly or involuntary.  Nor does Taylor contend that this Court relied on a constitutionally impermissible factor, that his sentence exceeded the statutory maximum, or that he received ineffective assistance of counsel *in connection with the plea agreement.* His ineffective assistance allegations are directed squarely at the investigation into and presentation of evidence and argument regarding the suppression motion.   Thus, Taylor has presented no ground on which to invalidate his waiver of the right to collaterally attack his conviction and sentence via § 2255 petition.

Last year, the Seventh Circuit enforced an appeal waiver in a plea agreement, reiterating the narrow set of claims that survive waivers and rejecting the argument that counsel's ineffectiveness at sentencing could be raised in the face of a waiver.

> [Defendant Smith] makes no argument that his counsel was ineffective in *negotiating the plea agreement* (including the waiver), which is the only iteration of ineffectiveness that the waiver preserves.  Nor, obviously, is he arguing that his sentence exceeded the statutory maximum or was the product of an impermissible factor, such as race.  Collectively, **these are the only sorts of grounds which we have indicated may be sufficient to overcome a broad … waiver such as the one Smith knowingly and voluntarily agreed to.**

*U.S. v. Smith*, 759 F.3d 702, 706 (7th Cir. 2014) (emph. added).  The Court of Appeals found that the appeal waiver contained in the plea agreement was express and unambiguous, that the defendant had received substantial benefits in exchange of his

agreement to the waiver and other conditions of the plea agreement, and that the waiver was fully enforceable. *Id.*

Similarly, in the case at bar, Taylor's waiver of the right to contest his conviction or sentence by collateral attack is unambiguous and straightforward. Taylor received benefits in exchange for his execution of the waiver.

> A defendant may certainly waive the right to appeal his conviction and sentence, as well as the ability to challenge either in a collateral attack. *United States v. Alcala,* 678 F.3d 574, 577 (7th Cir. 2012); *Keller v. United States,* 657 F.3d 675, 681 (7th Cir. 2011). We have repeatedly held "that a voluntary and knowing waiver of an appeal is valid and must be enforced." *See, e.g., United States v. Sakellarion,* 649 F.3d 634, 638 (7th Cir. 2011). There are only limited instances when we will not enforce a knowing and voluntary waiver of direct appeal or collateral review, including when the sentence exceeds the statutory maximum, when the plea or court relies on a constitutionally impermissible factor like race, or when counsel is ineffective in the negotiation of the plea agreement. *Keller v. United States,* 657 F.3d 675, 681 (7th Cir. 2011).

*Dowell,* **694 F.3d at 901-02. *See also United States v. Zitt,* 714 F.3d 511, 515 (7th Cir. 2013).** Taylor's § 2255 claims do not fall within the limited circumstances allowing a defendant to sidestep a waiver. The waiver is valid and enforceable.

Assuming *arguendo* that the waiver did not bar this § 2255 petition, Taylor's ineffective assistance of counsel claims would fail on the merits. Taylor would have to show both that his counsel's performance was deficient and that he was prejudiced as a result. ***Vinyard v. United States,* -- F.3d --, 2015 WL 6774043 (7th Cir. Nov. 4, 2015).** Taylor has not shown deficient performance by his counsel in this Court.[4]

---

[4]     As to appeals counsel being ineffective, Taylor offers a one-sentence assertion (Doc. 8, p. 4): "Appeal counsel went in a totally different direction, instead of looking at a complete review of the Court transcripts (or just wasn't

The record reveals that Mr. Skaggs vigorously presented and argued the suppression issue here. In the written motion and memorandum, Skaggs insisted that the warrantless entry into and search of Taylor's motel room violated the Fourth Amendment. At the hearing on the motion, Skaggs forcefully cross-examined the Government's witnesses, called his own witnesses, introduced evidence, presented argument, and filed a supplemental post-hearing brief.

Additionally, when squarely asked by Judge Wilkerson at the change of plea hearing one month **after** the Court denied the suppression motion, Defendant Taylor expressed only *satisfaction* with his attorney's representation (Doc. 11-3, p. 8):

THE COURT:          Mr. Taylor, have you had ample opportunity – that is, enough time – to discuss your case with Mr. Skaggs?

THE DEFENDANT:          Yes, sir.

THE COURT:          Are you satisfied with Mr. Skagg's [sic] representation?

THE DEFENDANT:          Yes, sir.

THE COURT:          Has there been anything you wanted him to do for you that he has not done?

THE DEFENDANT:          No, sir.[5]

---

paying attention to detail) counsel put forth a frivolous argument also." This undeveloped argument without any discussion or legal citation presents nothing for this Court to review. *See, e.g., Thornton v. M7 Aerospace LP*, **796 F.3d 757, 773 (7th Cir. 2015) (perfunctory arguments are deemed waived).**

[5]          The plea agreement Taylor signed also attests that Taylor is "fully satisfied" with the representation received from his counsel (Doc. 53, p. 8).

Taylor now criticizes Skaggs for failing to present a reasonable argument for suppression, failing to subpoena video surveillance of the motel, and failing to call motel employees to testify on Taylor's behalf.   Taylor suggests that if Skaggs had done these things, the Court would have granted the suppression motion.   Again, assuming the Court could reach these arguments (if the waiver could be ignored), the arguments are devoid of merit.  Skaggs presented a reasonable argument for suppression, and the Court held an evidentiary hearing over the course of two days during which Skaggs adduced evidence, offered cogent arguments, and robustly challenged the Government's witnesses.

Furthermore, an affidavit presented by Skaggs in this proceeding (Doc. 11-5) attests that he knew of no video surveillance equipment at the motel which would shed light on the events in question, that no video was provided to him or otherwise uncovered during discovery, that he sent an investigator to the motel as part of his investigation, and that the motel owner/manager was "less than helpful" to the investigator, had nothing useful to offer at the suppression hearing, and was not believed to have been a good witness for the defense if called.

Plus, attorney Skaggs effectively cross-examined the Government's witnesses (especially Officer Benyr as to the failure to advise Taylor of his Miranda rights) and did call two witnesses at the suppression hearing to bolster the defense claim that Taylor never consented to the officers' search of the motel room.   Taylor has not demonstrated the deficient performance prong of *Strickland*, so even if the Court could rule on the

merits of the ineffective assistance claim, Taylor would not prevail.  Which leaves Taylor's claim that the undersigned erred in two ways at sentencing.[6]

### D.       Analysis of Claim 2:   Errors by the Court at Sentencing

Anthony Taylor maintains that the Court (a) improperly applied a preponderance of the evidence standard "rather than beyond a reasonable doubt" at sentencing (Doc. 8, p. 1) and (b) incorrectly counted Taylor's prior offenses when calculating his criminal history.  The Court has found that Taylor waived the right to file a § 2255 petition on these grounds.  His voluntary and knowing waiver of the right to collaterally attack his sentence is valid and will be enforced.  If the Court *could* reach the merits, neither of Taylor's sentencing-based arguments would succeed.

Taylor fleetingly mentions the preponderance of the evidence argument in two places in his amended petition – in a "Question Presented" and in the subheading of an argument (Doc. 8, p. 1 and p. 13).   The former queries "Whether the Court abused its discretion when determining Petitioner's sentence by a preponderance of the evidence standard, rather than beyond a reasonable doubt."   The latter (the subheading for "Claim Two") repeats "the District Court Abused Its Discretion When Determining Defendant's Sentence by a Preponderance of the Evidence" (Doc. 8, p. 13).

---

[6]       Taylor also repeats arguments for suppression which he lost on direct appeal.  For instance, he attacks the undersigned's credibility determinations as to witnesses, including the police officers involved in the search of the motel room (Doc. 8, pp. 6-7; p. 11-12).   Those arguments were (or could have been) presented in the challenge to the suppression denial which was resolved by the Seventh Circuit.  This § 2255 petition is not a means for Taylor to pursue arguments he lost at the Court of Appeals.  A § 2255 petition may not be used as a substitute for or a recapitulation of a direct appeal.  ***See United States v. Fleming***, 676 F.3d 621, 625 (7th Cir. 2012); ***Varela v. United States***, 481 F.3d 932, 935 (7th Cir. 2007).

Taylor offers nothing to clarify this claim, and the United States did not address this point.  Without argument to guide analysis, the Court can only speculate as to the basis for this claim.  Of course, a convicted defendant has a due process right to be sentenced on the basis of accurate information, and:

> In applying that general principle, … it is "well established that a preponderance of the evidence is all that is required for a factual finding of drug quantity under the Sentencing Guidelines, due process concerns notwithstanding."

*United States v. Bozovich,* 782 F.3d 814, 817-18 (7th Cir. 2015), *quoting United States v. Medina,* 728 F.3d 701, 705 (7th Cir. 2013).  *See also United States v. Baines,* 777 F.3d 959, 963 (7th Cir. 2015) ("Relevant conduct must be established by a preponderance of the evidence."); *United States v. Lucas,* 670 F.3d 784, 792 (7th Cir. 2012) ("Generally, facts considered at sentencing must be proved by a preponderance of the evidence."); *United States v. Watts,* 519 U.S. 148, 156 (1997) ("application of the preponderance standard at sentencing generally satisfies due process").  The standard of proof for sentencing need be addressed no further, other than a quick reference to *Apprendi*.

Taylor does not identify any basis on which his sentence violated *Apprendi v. New Jersey,* 530 U.S. 466, 490 (2000) (holding that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt").  Nor can the Court discern an *Apprendi* problem here.  Taylor's plea agreement provided (and the Court at sentencing found) that Taylor had an offense level of 31 and a criminal history category of VI.  Thus, as to the term of imprisonment, Taylor's advisory Guideline range was 188 to 235 months.

The applicable statutory penalty was 5 to 40 years in prison, and the 144-month (12-year) sentence imposed herein did not exceed that or otherwise run afoul of *Apprendi*. *See United States v. Littrice*, **666 F.3d 1053, 1060 (7th Cir. 2012)**, *citing United States v. Veysey*, **334 F.3d 600, 602 (7th Cir. 2003) (a fact that merely moves the sentence around *within* the statutory sentencing range "need not be proved beyond a reasonable doubt").** The wrong-standard-of-proof-at-sentencing argument is a nonstarter.

Taylor offers more detailed argument as to remainder of his second claim for § 2255 relief – that the undersigned improperly counted prior convictions in sentencing Taylor. Again, assuming the Court could reach this argument on the merits (if there were no waiver of the right to collaterally attack the sentence on this basis), the argument fails.

The gravamen of this argument is that the undersigned improperly counted prior convictions to find that Taylor was a career offender under the Sentencing Guidelines. Specifically, Taylor contends that as to two of his prior crimes – which he identifies as aggravated assault and aggravated attempted escape – he was sentenced at the same time with the sentences running concurrently and, therefore, these convictions should *not* have been counted separately.[7] Taylor maintains that "these priors were considered as consolidated sentences because they were concurrent sentences, imposed on the same day," which the Court should have known if it relied only on "Shepard approved documents" (Doc. 8, p. 14).

---

[7]   Taylor attacks these priors as "too stale for Criminal History points" but *concedes* that they qualify for sentencing enhancement purposes (*see* Doc. 8, p. 14).

Nothing which occurred at sentencing contravened *Shepard* or otherwise violated Taylor's constitutional rights.  *Shepard v. United States,* **544 U.S. 13 (2005)**, tackled the question of what materials a sentencing judge could consult to determine if a defendant's prior conviction qualifies under the Armed Career Criminal Act, 18 U.S.C. 924(e) ("ACCA").  A bit of background caselaw helps steer the analysis of Petitioner's *Shepard*-based argument.

> The ACCA provides that anyone who has "three previous convictions ... for a violent felony or a serious drug offense, or both, committed on occasions different from one another" is an armed career criminal and subject to a fifteen-year mandatory minimum sentence.

*Kirkland v. United States*, **687 F.3d 878, 883 (7th Cir. 2012)**, *citing* **18 U.S.C. 924(e)(1).**

In *Shepard* and an earlier case, *Taylor v. United States,* **495 U.S. 575 (1990)**, the United States Supreme Court addressed how a sentencing court may determine whether a prior conviction is a violent felony or serious drug offense under the ACCA. *Shephard* limited the documents which a district court can review to decide whether a prior conviction qualifies as a violent felony or serious drug offense under the ACCA. *Id.,* **544 U.S. 13, 26.  See also Descamps v. United States, -- U.S. --, 133 S. Ct. 2276 (2013).**

Three months ago, the Seventh Circuit summarized *Shepard* and its progeny in *United States v. Ker Yang,* **799 F.3d 750 (7ᵗʰ Cir. 2015).**  The Seventh Circuit began by stating the general rule governing most cases – the federal sentencing court determines whether a prior conviction counts as a violent felony under the ACCA by using the so-called "categorical approach."   Under this approach, the sentencing judge examines the elements of the defendant's statute of conviction and asks if it has as an element the use,

attempted use, or threatened use of physical force against another person (*see* § 924(e)(2)(B)(i)) or it has elements that are the same as, or narrower than, those of the generic crimes listed in § 924(e)(2)(B)(ii) -- burglary, arson, extortion, or a crime involving the use of explosives.   ***Ker Yang, 799 F.3d at 752.***   The sentencing court compares the judgment to the statute of conviction and decides whether the elements of the prior offense are the type that makes the offense a violent felony.   And the court must answer this question without digging into the specific conduct of this particular offender/defendant.   ***Id.***   That is the typical approach.

> In some circumstances, however, ACCA permits the sentencing judge to look beyond the judgment and statue of conviction as part of the inquiry. Using what has been called the "modified categorical approach," the court may look to a limited selection of additional documents, including charging documents, plea agreements, jury instructions, plea and sentencing transcripts, and findings of fact and conclusions of law from a bench trial, when necessary to determine the elements of conviction – as opposed to the facts underlying the conviction….

> Resort to such materials is necessary when the prior conviction is for violating a divisible statute.  Such statutes list one or more elements in the alternative, giving the prosecution multiple ways to prove the offense.  If the judgment identifies only the statute of conviction, it will not specify which elements necessarily served as the basis for the conviction.  If not all alternatives would qualify the conviction as a violent felony under ACCA, a court may try to determine which alternatives served as the basis of a defendant's conviction.

> For this limited inquiry, these outside documents (often called "*Shepard* documents"…) are available and can prove decisive….  Once the elements of conviction are definitively established, the inquiry is identical to the categorical approach described above:  those elements are evaluated to determine whether they establish a violent felony under ACCA….  Even when this modified categorical approach is used, the sentencing court may use these additional sources "only to determine *which* crime within a statute the defendant committed, not *how* he committed that crime."

*Ker Yang,* **799 F.3d at 753,** *quoting United States v. Woods,* **576 F.3d 400, 405 (7ᵗʰ Cir.**

**2009).**

Simply put, a sentencing judge confronting an ambiguous judgment of prior conviction is permitted to consult ***Shepard*** documents (like plea and sentencing transcripts) to determine under which statute the defendant was convicted previously. *Ker Yang,* **799 F.3d at 754.** Here, Taylor asserts that, in calculating his criminal history, the undersigned Judge failed to rely on ***Shepard*-**approved documents which would have disclosed that the sentences for two of the priors were imposed the same day and ordered to run concurrently (so they should count as a single "consolidated" sentence).[8]

The Court did not then and need not now delve into the thicket of categorical and modified categorical approaches to resolve the question before it.   Taylor's argument regarding ***Shepard*-**approved documents is misplaced, because he ignores a key provision of the Sentencing Guidelines.   The Guidelines control when a district court counts two sentences separately or as a single sentence, and this Court followed the Guidelines in sentencing Taylor.

---

[8]      On this point, Taylor also takes aim at attorney Skaggs, intermingling an ineffective assistance argument with the challenge to this Court's findings at sentencing (i.e., like the Court, *defense counsel* failed to investigate the documents surrounding the underlying convictions, *see* Doc. 8, p. 14).  "An attorney's failure to object to an error in the court's guidelines calculation that results in a longer sentence for the defendant can demonstrate constitutionally ineffective performance."  ***Ramirez v. United States,*** **799 F.3d 845, 855 (7th Cir. 2015).**  But Skaggs zealously represented Taylor at sentencing, filing objections to the Presentence Investigation Report, presenting Taylor's argument that he was not a career offender, and filing a memorandum arguing for a sentence below the advisory Guideline range (*see* Docs. 64 and 66 in Case No. 12-CR-30090).

United States Sentencing Guideline § 4A1.2(a)(2) provides that crimes for which sentences are imposed on the same day count only once *unless there was an intervening arrest* between them.  ***See, e.g., United States v. Eubanks*, 593 F.3d 645, 654-55 (7th Cir. 2010); *United States v. Statham*, 581 F.3d 548, 554-55 (7th Cir. 2009).**  At sentencing, the undersigned explained why he was counting Taylor's prior convictions separately in calculating his criminal history.

> [D]efendant is arrested for the first offense before committing the second offense….  [He] was arrested for … the aggravated robbery on October 29th of 1986.… [H]e committed the second offense, the attempted aggravated escape and aggravated assault on law enforcement officer on March 10th of 1987….
>
> If there is no intervening arrest, the prior sentences are counted separately (unless the sentence is a result of offenses contained in the same charging document.  That is not the case here…).
>
> So my conclusion is the Guidelines are clear on this.  We have separate offenses and there was an intervening arrest between (or after the first one) such that the Guidelines are correctly calculated in this case, and the defendant is a career offender.  That is not to say, however, that I am necessarily going to sentence him as a career offender.

Sentencing Transcript, Doc. 87, pp.5-6, in Case No. 12-cr-30090.

This Court followed the Sentencing Guidelines in separately counting prior convictions which were separated by an intervening arrest.  As the Seventh Circuit stressed in *Eubanks*, 593 F.3d at 654: **"'[p]rior sentences always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest.'  U.S.S.G. § 4A1.2(a)(2).  Merely because Eubanks was sentenced for these offenses on the same day does make them one charge for criminal history purposes."** For the same reason, the undersigned separately counted Taylor's prior convictions

which were separated by an intervening arrest, even though Taylor was sentenced the same day on those charges.

And as to Taylor's argument regarding the staleness of his prior convictions, the undersigned recognized that the priors were "ancient" (Sentencing Transcript, Doc. 87, p. 6) and departed below the advisory Sentencing Guideline range of 188 to 235 months, imposing a 144-month sentence based in part on the age of Taylor's prior convictions.

###### E.    Conclusion

For all these reasons, the Court **DENIES** and **DISMISSES** Taylor's Amended 2255 petition (Doc. 8).  On October 26, 2015, while his petition was pending *and within the deadline for filing a reply brief*, Taylor filed a motion (Doc. 15).  That motion not only asks for appointment of counsel, it also interjects a third claim for § 2255 relief – the Supreme Court's recent opinion in *Johnson v. United States*, **-- U.S. --, 135 S. Ct. 2251 (2015).**   The undersigned will permit this supplemental claim (which Taylor could not have anticipated or included at the time he filed his original or amended petition herein) to proceed as described below.

###### F.    Supplemental § 2255 Claim Based on *Johnson*

The Armed Career Criminal Act enhances the sentence for a defendant who has three prior convictions "for a violent felony or serious drug offense."  *United States v. Jones*, **689 F.3d 696, 699 (7th Cir. 2012).**   Until June of this year, a prior conviction could qualify as a violent felony under three different sections of the ACCA -- the elements clause, the enumerated clause, or the residual clause.  **18 U.S.C. § 924(e)(2)(B).**  In

*Johnson,* the high Court found the residual clause of the ACCA unconstitutionally vague.

In the criminal case underlying this § 2255 petition, Probation determined that Taylor was subject to an enhanced sentence as a career offender *under the Sentencing Guidelines,* not the ACCA.  Probation found that Taylor had two or more prior felony convictions for crimes of violence – aggravated robbery (Case No. 86-CR-618-PB) and attempted aggravated escape and aggravated assault on a law enforcement officer (Case No. 87-CR-253-PB).  Because Taylor's instant conviction involved a controlled substance offense and he was 18 years or older at the time of its commission, Probation found that Taylor was a career offender under § 4B1.1 of the Sentencing Guidelines.  The undersigned agreed that Taylor was a career offender under § 4B1.1 of the Guidelines.

> **He is a career offender under the guidelines.** That is a significant branding, if you will. What causes that are two predicate offenses which were committed over 25 years ago.  However, he is not a poster child for claiming that the career offender status is Draconian in that after the sentence he continued with a history of criminality…. Again, were he not a career offender, he would be a total offense level of 23, criminal history category of five, and that would call for advisory range of 84 to 105 months.  The defense counsel suggests a sentence of 96 months in the middle would be appropriate.

> **He, however, is career offender.**  That calls for offense level of 31, criminal history category of six, 188 to 235 months, the difference being 104 months on the low end of the guidelines and 130 months on the high end.  It is not insignificant….

> So I am facing a career offender status of an individual who has predicate offenses that are quite old, but again, not the poster child for Draconian overreaching … because of his continued criminality….  The fact is, however, I don't think career offender status in this particular case, despite his significant ongoing criminal history, is fair. I think he is somewhere between career offender status and the 23/5 guideline range.

Sentencing Transcript, Doc. 87, pp. 22-24 in Case No. 12-CR-30090 (emph. added). Ultimately, the Court imposed a sentence well below the 188-235-month advisory Guideline range for a career offender (a sentence of 144 months in prison).

The issue arises what effect, if any, *Johnson* has on Taylor's sentence.  To repeat, *Johnson* struck down the residual clause of the ACCA.  Taylor was *not* sentenced under the ACCA.  He was sentenced under § 4B1.1 of the Guidelines.  In the wake of *Johnson,* federal courts (including the Seventh Circuit) have begun to explore whether the rationale of *Johnson* applies equally to the residual clause contained in the Sentencing Guidelines – U.S.S.G. §4 B1.2(a)(2).

For instance in ***Ramirez v. United States*, 799 F.3d 845, 856 (7th Cir. 2015)**, the Seventh Circuit stated:

> In *Johnson v. United States,* … the Supreme Court held that the identically worded residual clause of the Armed Career Criminal Act is unconstitutionally vague. Compare U.S.S.G. § 4B1.2(a)(2) with 18 U.S.C. § 924(e)(2)(B)(ii). We have interpreted both residual clauses identically, … and so we proceed on the assumption that the Supreme Court's reasoning applies to section 4B1.2 as well.... We note that the U.S. Sentencing Commission is now seeking comments on a proposal to change the guideline language to make it conform to *Johnson…*. We leave any issue about the effect of *Johnson* on the Guidelines for another day.

Anthony Montez Taylor was not sentenced under the residual clause of the ACCA (invalidated in *Johnson*).  It is not immediately clear if Taylor was sentenced under the ***residual*** clause of the Guidelines either (U.S.S.G. § 4B1.2(a)(2), which may be susceptible to constitutional challenge for the same reasons articulated in *Johnson*).

The Court will allow the parties to brief whether Taylor has a viable *Johnson*-based claim for § 2255 relief.[9]

In accord with Administrative Order 176 of this District Court, the Federal Public Defender's Office for the Southern District of Illinois is **APPOINTED** to assist Petitioner Taylor ***on this Johnson-based supplemental § 2255 claim only.*** A copy of this Order shall be sent both to Federal Public Defender Phillip J. Kavanaugh and to Petitioner Taylor. Now that Petitioner Taylor has appointed counsel, he shall file no further pro se pleadings herein.

The Court **SETS THE FOLLOWING BRIEFING SCHEDULE** on the *Johnson*-based claim for § 2255 relief presented in Taylor's October 26, 2015 motion (Doc. 15).

- By **<u>January 22, 2016</u>**, the United States shall file its **response** to Taylor's request for § 2255 relief based on *Johnson*.

- By **<u>February 22 , 2016</u>**, Petitioner's counsel may file a **reply brief**.

The briefs should address, *inter alia,* whether this § 2255 claim is barred by the waiver contained in Taylor's plea agreement. (Recall that the waiver did not apply to a subsequent change in the interpretation of the law by the United States Supreme Court "that is declared retroactive by [that Court] … and that renders the defendant actually innocent of the charges covered herein" or to "appeals based upon Sentencing Guideline amendments that are made retroactive by the United States Sentencing Commission" (Doc. 53, p. 8, in Case No. 12-cr-30090)).

---

[9] The undersigned reserves determination regarding issuance of a certificate of appealabilty until the final ground for § 2255 relief is resolved.

For docketing purposes, Doc. 15 *is granted in part* (the request for appointment of counsel) and *ruling is reserved in part* (to the extent that the motion presents a third claim for § 2255 relief, subject to the briefing schedule above-imposed).

IT IS SO ORDERED.

DATED November 25, 2015.

s/ ***Michael J. Reagan***

Michael J. Reagan
United States District Judge